# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DINO SCHWERTZ                                    CIVIL ACTION

versus                                           NO. 12-1897
                                                 consolidated with
                                                 NO. 12-2142

BURL CAIN                                        SECTION: "I" (1)

## REPORT AND RECOMMENDATION

These matters were referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that the matters can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petitions be **DISMISSED WITH PREJUDICE**.

Petitioner, Dino Schwertz, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On April 2, 2009, he was convicted of aggravated rape and molestation of a juvenile under Louisiana law.[1] On May 15, 2009, he was sentenced on the aggravated rape conviction to a term of life imprisonment without benefit of probation, parole, or

---

[1] State Rec., Vol. VII of X, trial transcript, p. 1088; State Rec., Vol. III of X, minute entry dated April 2, 2009.

suspension of sentence, and on the molestation conviction to a consecutive term of twenty years imprisonment.[2]  On August 6, 2009, he was adjudicated a second offender and was resentenced as such on the molestation conviction to a consecutive term of twenty years imprisonment.[3]  On May 7, 2010, the Louisiana First Circuit Court of Appeal affirmed petitioner's convictions, habitual offender adjudication, and sentences.[4]  On January 7, 2011, the Louisiana Supreme Court denied his related writ application.[5]

On or about January 24, 2011, petitioner filed a document seeking post-conviction relief with the state district court.[6]  On February 11, 2011, petitioner was notified that he must use the Uniform Application for Post-Conviction Relief required by the state courts.[7]  After petitioner submitted the required form on or about February 23, 2011,[8] the state district court denied relief on June 24, 2011.[9]  The Louisiana First Circuit Court of Appeal then denied his related writ application

---

[2] State Rec., Vol. VII of X, transcript of May 15, 2009; State Rec., Vol. III of X, minute entry dated May 15, 2009.

[3] State Rec., Vol. VII of X, transcript of August 6, 2009; State Rec., Vol. III of X, minute entry dated August 6, 2009; see also State Rec., Vol. III of X, Reasons for Judgment dated August 13, 2009.

[4] State v. Schwertz, No. 2009 KA 2183, 2010 WL 1838325 (La. App. 1st Cir. May 7, 2010); State Rec., Vol. II of X.

[5] State v. Schwertz, 52 So.3d 883 (La. 2011) (No. 2010-KO-1315); State Rec., Vol. II of X.

[6] State Rec., Vol. II of X.

[7] State Rec., Vol. II of X, letter to petitioner from Judge William J. Crain dated February 11, 2011; see also State Rec., Vol. II of X, Order and Reasons dated June 24, 2011, p. 3 n.5.

[8] State Rec., Vol. II of X.

[9] State Rec., Vol. II of X, Order and Reasons dated June 24, 2011.

on September 14, 2011,[10] and refused to consider his request for rehearing on September 27, 2011.[11] The Louisiana Supreme Court also denied his related writ application on May 25, 2012,[12] and likewise denied reconsideration on August 22, 2012.[13]

In the interim, petitioner filed two separate but similar applications for federal *habeas corpus* relief with the United States District Court for the Middle District of Louisiana. Both matters were subsequently transferred to this Court and consolidated.[14]

In his federal application in Civil Action No. 12-1897, petitioner's application is a rambling narrative with no clear delineation of his claims. However, it appears that he is asserting the following claims:

---

[10] State v. Schwertz, No. 2011 KW 1373 (La. App. 1st Cir. Sept. 14, 2011); State Rec., Vol. II of X.

[11] State v. Schwertz, No. 2011 KW 1373 (La. App. 1st Cir. Sept. 27, 2011); State Rec., Vol. II of X.

[12] State *ex rel.* Schwertz v. State, 90 So.3d 405 (La. 2012) (No. 2011-KH-2281); State Rec., Vol. II of X.

[13] State *ex rel.* Schwertz v. State, 95 So.3d 1062 (La. 2012) (No. 2011-KH-2281).

[14] The state contends that the petition in Civil Action No. 12-2142 should be treated as a "second or successive" petition which runs afoul of the prohibitions set forth in 28 U.S.C. § 2244(b). There arguably is support for that contention. See, e.g., *In re* Sam, No. 12-30137 (5th Cir. Apr. 6, 2012). However, both of the petitions here were filed within a very short period of time before the state had even responded to the first petition. There is simply no indication that petitioner's decision to file the two contemporaneous applications stemmed from any nefarious desire to abuse the system or to obtain piecemeal review of his claims. Rather, it appears that the *pro se* petitioner was merely unaware of the proper way to proceed, and the Court finds that it is therefore more fair and sensible to treat the petitions as one consolidated matter. This is especially true in light of the fact the petitions appear to present essentially the same claims and, therefore, the same legal analysis applies to both.

1.      Newly discovered evidence shows that petitioner is actually innocent of the charges of which he stands convicted;[15]

2.      There was insufficient evidence to support his conviction;[16]

3.      The state failed to disclose evidence to the defense as required by Brady v. Maryland, 373 U.S. 83 (1963), and its progeny;[17]

4.      Petitioner received ineffective assistance of counsel;[18] and

5.      The prosecutors engaged in misconduct.[19]

Petitioner's application in Civil Action No. 12-2142 is likewise rambling and difficult to decipher. However, that application is strikingly similar to the petition in Civ. Action No. 12-1897, appearing to contain the same claims:

1.      Newly discovered evidence shows that petitioner is actually innocent of the charges of which he stands convicted;[20]

2.      There was insufficient evidence to support his conviction;[21]

---

[15] Rec. Doc. 1, p. 5 (No. 12-1897).

[16] Rec. Doc. 1-1, p. 4 (No. 12-1897).

[17] Rec. Doc. 1-1, pp. 4-5 (No. 12-1897).

[18] Rec. Doc. 1-1, pp. 7-8 (No. 12-1897).

[19] Rec. Doc. 1-1, p. 15 (No. 12-1897).

[20] Rec. Doc. 1, p. 2; Rec. Doc. 5, p. 15 (No. 12-2142).

[21] Rec. Doc. 1, p. 3 (No. 12-2142).

3.      The state failed to disclose evidence to the defense as required by <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny;[22]

4.      Petitioner received ineffective assistance of counsel;[23] and

5.      The prosecutors engaged in misconduct.[24]

The state concedes that the applications are timely. However, the state argues that the applications should be dismissed because petitioner failed to exhaust his remedies in the state courts.[25] That may well be the case, but it is hardly clear. Petitioner' state court filings are no easier to decipher than his pleadings in this Court, and so dismissing the instant applications based on exhaustion grounds would be dicey at best. Fortunately, this Court can pretermit a decision on the exhaustion issue, because it has the authority to deny *habeas* claims on the merits regardless of whether the petitioner exhausted his state court remedies and whether exhaustion is waived by the state. 28 U.S.C. § 2254(b)(2); <u>Jones v. Jones</u>, 163 F.3d 285, 299 (5th Cir. 1998); <u>Woods v. Cain</u>, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008). Because

_____

[22] Rec. Doc. 1, p. 13 (No. 12-2142).

[23] Rec. Doc. 1, pp. 2 and 12-13 (No. 12-2142).

[24] Rec. Doc. 1, p. 4 (No. 12-2142).

[25] The Court notes that petitioner first sought federal *habeas corpus* relief in 2009, but that application was dismissed without prejudice based on his failure to exhaust his state court remedies. <u>Schwertz v. Angola State Prison</u>, Civ. Action No. 09-7234, 2010 WL 836566 (E.D. La. Mar. 8, 2010).

petitioner's claims have no merit, it is recommended that they simply be dismissed on that basis in the interest of judicial economy.

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  <u>Bell</u>, 535

U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals

has explained:

> A state court decision is contrary to clearly established precedent if
> the state court applies a rule that contradicts the governing law set
> forth in the [United States] Supreme Court's cases.  A state-court
> decision will also be contrary to clearly established precedent if the
> state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme
> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

<u>Wooten v. Thaler</u>, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court

has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways.  First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the
> facts of the particular state prisoner's case.  Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not
> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

<u>Williams v. Taylor</u>, 529 U.S. 362, 407 (2000).   The Supreme Court has noted that the focus of this

inquiry "is on whether the state court's application of clearly established federal law is objectively

unreasonable, and we stressed in <u>Williams</u> that an unreasonable application is different from an incorrect one." <u>Bell</u>, 535 U.S. at 694; <u>see also</u> <u>Puckett v. Epps</u>, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), <u>cert. denied</u>, 132 S.Ct. 1537 (2012).

      While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
>     If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

<u>Harrington v. Richter</u>, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

II. Facts

      On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

>     In March 2008, N.C.[FN1], an eight-year-old third grader at Abney Elementary School (Abney) in Slidell, Louisiana, advised his

–  8  –

mother that the janitor at his school touched him inappropriately in the school bathroom. N.C.'s mother immediately reported the matter to the police. In an interview with Bethany Case of the Children's Advocacy Center, N.C. stated defendant touched his penis and his buttocks with his hand.

> [FN1] In accordance with LSA-R.S. 46:1844W, the victims herein are referenced only by their initials.

> In March 2008, another incident of sexual abuse by the janitor at Abney Elementary School was reported. J.B., a special-education student, told his father that the janitor touched him inappropriately inside the school restroom. J.B.'s father tape-recorded the verbal disclosure and immediately contacted the police to report the matter. J.B. later told Jobeth Rickles, a forensic interviewer at the Children's Advocacy Center, that the janitor anally raped him inside the school restroom on more than one occasion.
> Defendant worked as a janitor at Abney Elementary School. In connection with the police investigation of the sexual abuse allegations, both N.C. and J.B. identified defendant, from a photographic lineup, as the janitor who sexually abused them. Defendant was arrested and charged with the aggravated rape of J.B. and molestation of N.C.[26]

### III. Petitioner's Claims

### A. Newly Discovered Evidence of Actual Innocence

Petitioner's primary claim appears to be that he should be granted relief because newly discovered evidence shows that he is actually innocent. However, as the state correctly notes in its response, that claim is not cognizable in this federal *habeas corpus* proceeding. As Justice Holmes noted long ago, what a federal *habeas* court has "to deal with is *not* the petitioner['s] innocence or guilt but *solely* the question whether [his] constitutional rights have been preserved."

---

[26] State v. Schwertz, No. 2009 KA 2183, 2010 WL 1838325, at *1-2 (La. App. 1st Cir. May 7, 2010); State Rec., Vol. II of X.

<u>Moore v. Dempsey</u>, 261 U.S. 86, 87-88 (1923) (emphasis added). The Supreme Court reiterated that view seventy years later, noting:

> Claims of actual innocence based on newly discovered evidence have *never* been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. ... This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – *not* to correct errors of fact.

<u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993) (emphasis added); <u>see also</u> <u>Kincy v. Dretke</u>, 92 Fed. App'x 87, 92 (5th Cir. 2004); <u>Lucas v. Johnson</u>, 132 F.3d 1069, 1074 (5th Cir. 1998); <u>Newman v. Cain</u>, Civ. Action No. 09-4445, 2010 WL 1817771, at *7-8 (E.D. La. Apr. 12, 2010), <u>adopted</u>, 2010 WL 1838064 (E.D. La. May 4, 2010); <u>Bolton v. Cooper</u>, Civ. Action No. 07-626, 2007 WL 2713259, at *4 (E.D. La. Sept. 14, 2007). Where a convicted inmate uncovers new evidence tending to prove his innocence, his recourse is to seek executive clemency, not federal *habeas corpus* relief. <u>Herrera</u>, 506 U.S. at 417.

## B. Sufficiency of the Evidence

Petitioner's second claim is that the evidence was insufficient to support his convictions. On direct appeal, the Louisiana First Circuit Court of Appeal rejected that claim, holding:

> [D]efendant argues that the evidence presented by the state is insufficient to support the convictions because the only evidence of the alleged offenses came in the form of testimony of the two minor victims, whose versions of the events varied each time they were told. Defendant argues that the testimony of both victims was unbelievable and insufficient to meet the state's burden of proving his guilt beyond a reasonable doubt. In response, the state asserts there was ample evidence presented at defendant's trial to support the convictions.

The standard for reviewing the sufficiency of evidence is set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), see also LSA-C.Cr.P. art. 821. Under Jackson, the standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319, 99 S .Ct. at 2789; State v. James, 02-2079, p. 3 (La.App. 1 Cir. 5/9/03), 849 So.2d 574, 579.

This standard of review, in particular the requirement that the evidence be viewed in the light most favorable to the prosecution, obliges the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing. See State v. Mussall, 523 So.2d 1305, 1308-11 (La. 1988). Thus, the reviewing court is not permitted to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. See State v. Burge, 515 So.2d 494, 505 (La.App. 1 Cir. 1987), writ denied, 532 So.2d 112 (La. 1988).

When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Woods, 00-2147, p. 5 (La.App. 1 Cir. 5/11/01), 787 So.2d 1083, 1088, writ denied, 01-2389 (La. 6/14/02), 817 So.2d 1153. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. See State v. Johnson, 99-0385, p. 9 (La.App. 1 Cir. 11/5/99), 745 So.2d 217, 223, writ denied, 00-0829 (La. 11/13/00), 774 So.2d 971. This court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Marshall, 99-2884, p. 5 (La.App.1 Cir. 11/8/00), 808 So.2d 376, 380.

The crime of aggravated rape is defined in LSA-R.S. 14:42, which provides, in part, as follows:

> A. Aggravated rape is a rape committed ... where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

> * * * *

(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

"Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." LSA-R.S. 14:41A. "Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime." LSA-R.S. 14:41B.

Louisiana Revised Statutes 14:81.2A defines molestation of a juvenile as:

> Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.

At the trial of this matter, M.C., N.C.'s mother, testified she was at home looking at an article on the internet about defendant when N.C. walked in the room. Upon seeing defendant's picture on the computer screen, N.C. started trembling and became very terrified. N.C. told his mother that defendant was the "bad man" at school who hurt him. N.C. told his mother defendant touched him on his genitals and anus.

N.C. testified that one day he was using the second-grade restroom when defendant entered and fondled his genitals inside the school restroom. According to N.C, his pants were still down a little and defendant used his hands to touch N.C. on his bare skin. N.C. stated he pulled away from defendant and ran out of the restroom. N.C. claimed he returned to his classroom and did not report the incident because defendant told him not to tell. N.C. eventually disclosed defendant's inappropriate behavior to his mother and he was taken to the Children's Advocacy Center to be interviewed. The videotaped interview was played for the jury at trial. In the

interview, N.C. told Bethany Case, the forensic interviewer, that defendant touched his penis and anus several times. N.C. demonstrated where defendant had touched him using an anatomical drawing. He claimed defendant touched him on top of his clothing. Later, when questioned regarding the inconsistencies in his reports of the abuse, N.C. admitted that he initially told Ms. Case that defendant touched him on top of his clothing because he was embarrassed.

N.C. identified defendant in open court as the school janitor who fondled him. He also testified that he previously identified defendant in a photographic lineup provided by the investigating officers.

J.B. testified and provided details regarding several incidents of abuse by defendant. J.B. claimed that on at least two separate occasions defendant approached him in the restroom, forced him into a stall and pulled his pants down. According to J.B., defendant inserted his penis into his rectum and started "going in and out." On both occasions, defendant threatened to kill J.B. if he told anyone. J.B. explained that he never told anyone about the rapes because he was afraid that defendant would kill him.

J.B. explained that he finally told his father about the abuse after the school sent home a note advising parents to speak with their children regarding possible sexual abuse at school. He explained that he did not tell his father everything at first. The tape-recorded statement, which was played at the trial, revealed that J.B. initially claimed that defendant only fondled his genitals. He did not report any sexual penetration or rape. J.B. explained that he was afraid to provide full details of the abuse because he believed defendant would come and kill him.

In his initial interview at the Children's Advocacy Center, J.B. told JoBeth Rickles that defendant forced him into a stall inside the restroom and touched him under his clothing in "personal places." He claimed that defendant used only his hand. At this time, J.B. indicated that the abuse occurred only once and no one else was present.

In a subsequent interview, J.B. told Ms. Rickles he came back to talk to her because he had more to tell. He advised that in addition to the initial incident, there were two other incidents wherein defendant put his penis inside J.B.'s anus. After each of the anal rapes, defendant threatened to kill J.B. if he ever told anyone. J.B.'s trial testimony was consistent with this report of two anal rapes.

It is well settled that if found to be credible, the testimony of the victim of a sex offense alone is sufficient to establish the elements

of the offense, even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. See State v. Hampton, 97-2096, p. 3 (La.App. 1 Cir. 6/29/98), 716 So.2d 417, 418. Therefore, the victims' testimony, which the jury obviously found credible, was sufficient to prove all elements of aggravated rape and molestation of a juvenile.

Defendant presented testimony from Kathleen Katsorchis, the principal of Abney Elementary. She testified that defendant worked as a long-term sub custodian at Abney Elementary. According to Katsorchis, the school practice is to use the "buddy system" or teacher-escort system in allowing students to use restroom facilities. She further testified that it is school policy that all restroom doors are to remain open. It is also school policy that janitors are not to remain in the restroom if a student enters. If the janitor is in the restroom, he is to place a sign or cleaning cone outside the restroom to indicate that it is being cleaned. Katsorchis testified that, when defendant first started working at Abney, she received a report indicating that defendant failed to follow policy and leave the restroom when a student was present. She explained that she addressed the situation with defendant and had no further problems of this sort. Katsorchis testified that she did not receive any complaints from students regarding defendant in the 2008 school year.

According to Katsorchis, because there is a classroom that shares a wall with the restroom where the sexual abuse allegedly occurred, and since the policy mandates that the doors remain opened, any noise inside the restroom is usually heard by a teacher or other faculty member.

Lisa Nanias, another custodian at Abney Elementary, testified on behalf of the defense. She explained that the school policy mandated that the restroom doors remain opened. She also testified that the janitors were aware that they were not to be in the restrooms when students were present. She claimed she never observed defendant violate the policy nor did she know of any student complaints regarding defendant. Nanias further testified regarding the structure of the school building. She explained that the building is a modular type, with thin walls. She believed that if a child was to scream or yell, there was no reason the sound would not be heard.

Defendant did not testify at the trial.

In the present case the jury obviously chose to believe the testimony of the young victims regarding defendant's actions. Although there were some inconsistencies between the young victims' trial testimony and the pretrial statements to their parents,

the police, and the Children's Advocacy Center interviewers, the jury determined that the victims progressively disclosed the incidents of abuse and that the incidents described in their trial testimony are what actually occurred. Simply because the defense witness suggested the incidents could not have happened the way the children claimed (children are not typically alone in the restroom), this does not automatically render the testimony provided by the child victims incredible. The jury was required to make a credibility determination. The jury obviously chose to believe the victims. The fact that the record contains evidence that conflicts with testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. See State v. Busch, 515 So.2d 605, 609 (La.App. 1 Cir. 1987).

 Therefore, after carefully reviewing the record in this case, we find that any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the state proved beyond a reasonable doubt that defendant committed the aggravated rape of J.B. and molestation of N.C., a juvenile. This assignment of error lacks merit.[27]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons.[28]

 Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting petitioner's claim unless he shows that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213

---

[27] State v. Schwertz, No. 2009 KA 2183, 2010 WL 1838325, at *9-12 (La. App. 1st Cir. May 7, 2010); State Rec., Vol. II of X.

[28] State v. Schwertz, 52 So.3d 883 (La. 2011) (No. 2010-KO-1315); State Rec., Vol. II of X.

F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that petitioner has made no such showing.

As correctly noted by the state court, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added). Moreover, Louisiana's circumstantial evidence standard requiring that the every reasonable hypothesis of innocence be excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011), cert. denied, 132 S.Ct. 1713 (2012); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010).

In the instant case, the elements of the crimes were clearly established through the testimony of the victims themselves. In light of that testimony, no further evidence was constitutionally required, because the victims' testimony was alone sufficient to support the convictions. Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); see also Fetterley v. Whitley, No. 94-30310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Crumholt v. Cain, Civ. Action No. 11-2543, 2011 WL 6329934, at *8 (E.D. La. Nov. 29, 2011), adopted, 2011 WL 6329868 (E.D. La. Dec. 19, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *26 (E.D. La. Oct. 29, 2009). Moreover, although petitioner disputes the credibility of the victims, witness credibility is an issue for the jury, not a federal *habeas* court. Where a petitioner's insufficient evidence claim is based on the credibility of a witness, a federal *habeas* court generally will not grant relief. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson [v. Virginia, 443 U.S. 307 (1979)], the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the Jackson standard for habeas relief."); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

For the reasons noted by the state court, the evidence presented in the instant case, viewed in the light most favorable to the prosecution, was clearly sufficient for any rational trier of fact to find petitioner guilty beyond a reasonable doubt. Therefore, he cannot show that the state

court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, this Court should defer to the state court's decision rejecting that claim.

## C.  Brady Violation

Petitioner's third claim is that the state failed to disclose evidence to the defense as required by Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.  This claim is vague at best, and it unclear exactly what evidence he is contending was withheld.

It is beyond cavil that the prosecution may not withhold from the defense exculpatory or impeachment evidence.  The United States Supreme Court has held:

> A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused.  This Court has held that the Brady duty extends to impeachment evidence as well as exculpatory evidence, and Brady suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor.  Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different, although a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. The reversal of a conviction is required upon a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

Youngblood v. West Virginia, 547 U.S. 867, 869-70 (2006) (per curiam) (internal citations and quotation marks omitted).  Therefore, to prevail on a Brady claim, a petitioner "must show that (1) the state withheld evidence, (2) the evidence was favorable to the accused, and (3) the evidence is material to guilt or punishment."  DiLosa v. Cain, 279 F.3d 259, 262-63 (5th Cir. 2002).

Here, petitioner's claim falters on the very first prong of that analysis. In the instant case, the state provided the defense with "open file" discovery,[29] and petitioner has offered *no* evidence, such as an affidavit from defense counsel, in support of his bald allegation that any evidence was withheld. That failure to provide any evidence whatsoever on the initial prong of the Brady inquiry is, in and of itself, fatal. Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *5 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011), cert. denied, 132 S.Ct. 1713 (2012); Williams v. Cain, Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *5 (E.D. La. May 7, 2009), aff'd, 359 Fed. App'x 462 (5th Cir. 2009); Watson v. Cain, Civ. Action No. 06-613, 2007 WL 1455978, at *7 (E.D. La. May 17, 2007); Abron v. Cain, Civ. Action No. 05-876, 2006 WL 2849773, at * 10 (E.D. La. Oct. 3, 2006); see Harris v. United States, 9 F. Supp. 2d 246, 275 (S.D.N.Y. 1998) ("[T]he government does not bear the burden of establishing that documents were not withheld; it is [petitioner's] burden to prove that the government failed to disclose evidence favorable to [him]."), aff'd, 216 F.3d 1072 (2nd Cir. 2000). Therefore, petitioner has clearly failed to meet his burden of proof with respect to this claim, and, therefore, relief should be denied.

Out of an abundance of caution, the Court makes one other observation with respect to this claim. Although petitioner's Brady claim is vague, it may be based on the fact that the defense was not given a copy of the tape-recorded statement made by J.B.'s father. If that is the evidence which petitioner is claiming was withheld, that contention clearly has no merit. As the state courts found, the defense was made aware of the audiotape but simply failed to request a copy.

---

[29] State v. Schwertz, No. 2009 KA 2183, 2010 WL 1838325, at *5-6 (La. App. 1st Cir. May 7, 2010); State Rec., Vol. II of X; see also State Rec., Vol. VII of X, trial transcript, pp. 946-55 and 960-62.

On direct appeal, the issue of the audiotape was discussed in the context of a claim that the state

failed to fulfill its obligation to provide discovery.  The Louisiana First Circuit Court of Appeal

rejected that claim, holding:

> [D]efendant asserts the state violated the rules of discovery by not
> specifically informing the defense of the statement made by J.B. and
> tape-recorded by his father when the abuse was initially disclosed,
> and in failing to provide the defense with a copy of said statement
> prior to trial.  He argues that, as a result of the state's failure to
> comply with the rules of discovery, the statement in question should
> have been deemed inadmissible at the trial.  Although he notes that
> the state provided open-file discovery, defendant argues that
> open-file discovery, alone, does not absolve the state of its duty to
> "inform the defense of the evidence against the defendant."  In
> response, the state notes that, in compliance with defendant's
> discovery request, the state copied its current file materials and
> provided the copies to the defense.  According to the state, the
> recording in question was referenced in the copies of the file
> materials provided to defense counsel.  The state further advised the
> defense that "all physical evidence was available upon request for
> inspection."  Thus, the state contends that defense counsel's failure
> to inspect the evidence in question does not constitute a discovery
> violation and it does not render the evidence inadmissible.
>
> The purpose of pretrial discovery procedures is to eliminate
> unwarranted prejudice to a defendant that could arise from surprise
> testimony.  State v. Mitchell, 412 So.2d 1042, 1044 (La. 1982).
> Discovery procedures enable a defendant to properly assess the
> strength of the state's case against him in order to prepare his
> defense.  State v. Roy, 496 So.2d 583, 590 (La.App. 1 Cir. 1986),
> writ denied, 501 So.2d 228 (La. 1987).  If a defendant is lulled into
> a misapprehension of the strength of the state's case by the failure to
> fully disclose, such a prejudice may constitute reversible error.  State
> v. Ray, 423 So.2d 1116, 1118 (La. 1982).
>
> On appeal, defendant does not deny that the statement in
> question, which was introduced at the trial in connection with J.B.'s
> testimony, was mentioned in the discovery response provided by the
> state.  Instead, he complains that the statement in question was
> mentioned "only once or twice in the 700-1000 pages provided to the
> defense."  He argues that "[h]iding the reference among that
> documentation is ineffective notice of the statement" and that

providing notice of the statement in this manner was "token compliance only."

In denying defendant's discovery violation claim, the trial court reasoned:

> The objection was to the use of the apparent microcassette tape recording that was taken of [J.B.]. His statement, the tape was recorded by his father at the time that the alleged incident was disclosed to his father at his home.
>
> That microcassette, according to the discovery that was produced, was delivered over to the Slidell Police Department, specifically to Detective Mistretta, on March 10th of 2008. There are several references to the delivery of the microcassette tape to the Slidell Police Department.
>
> I understand that discovery was requested of the State under Code of Criminal Procedure Article 718, that in response to that discovery request that the State produced some 700-plus documents in their file and it also advised that they were making open file discovery available to the defendant.
>
> I find that the tape was sufficiently identified in the response to discovery and find that the State complied to the extent requested ... and I'm not going to exclude it based on that fact.

Upon reviewing the record and evidence, we find no error by the trial court in its ruling on the discovery objection by the defense. The record reflects that, in response to defendant's initial discovery motion, the state agreed to provide open-file discovery and provided a voluminous discovery response package. Thus, defendant was provided access to any and all evidence in the state's file. As the trial court noted, the statement was referenced several times in the documents provided by the state. A Case Resume document in the state's discovery response clearly refers to the statement in question and notes that it was turned over to the police by J.B.'s father. An evidence receipt included in the discovery response also lists the microcassette tape as evidence collected in connection with the case. Therefore, it is clear that the state fulfilled its obligation of notifying defendant of the existence of the taped statement. It was then

incumbent on defendant to request access to the tape for review in preparation for trial.

Furthermore, even if a discovery violation occurred, it would not constitute reversible error without actual prejudice to the defendant's case. <u>See</u> <u>State v. Francis</u>, 00-2800, pp. 5-6 (La.App. 1 Cir. 9/28/01), 809 So.2d 1029, 1033. Defendant has failed to demonstrate any prejudice to his case. In J.B.'s interview at the Children's Advocacy Center, he stated that his father recorded the initial disclosure of the abuse. The Case Resume document provided with the state's discovery response also provides details regarding the content of the statement. It is noted that in his initial disclosure J.B. only claimed that the janitor fondled his genitals and anus. Thus, it is clear that even without a copy of the actual taped recording, defendant was not lulled into a misapprehension of the strength of the state's case.

This assignment of error lacks merit.[30]

If petitioner is attempting to now recharacterize this claim as a <u>Brady</u> claim, it fares no better. The audiotape was not suppressed or withheld from the defense; on the contrary, the prosecution expressly alerted the defense of the audiotape's existence and of the gist of the recorded statement. The fact that the defense failed to act on that information and to request a copy of the audiotape is not an error attributable to the state and clearly does not violate <u>Brady</u>. The prosecution is not obligated to provide materials to a defendant's trial counsel where defense counsel could have obtained the materials by exercising reasonable diligence. <u>Rector v. Johnson</u>, 120 F.3d 551, 558-59 (5th Cir. 1997); <u>Kutzner v. Cockrell</u>, 303 F.3d 333, 336 (5th Cir. 2002).

Moreover, in any event, the audiotape was produced and introduced at trial. Where, as here, the evidence at issue came to light during trial in sufficient time for defense counsel to put it to effective use, it was not "suppressed" in violation of <u>Brady</u> and its progeny. <u>See, e.g., Lawrence</u>

---

[30] <u>State v. Schwertz</u>, No. 2009 KA 2183, 2010 WL 1838325, at *5-6 (La. App. 1st Cir. May 7, 2010); State Rec., Vol. II of X.

v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994); United States v. McKinney, 758 F.2d 1036, 1049-50 (5th Cir. 1985); Smith v. Travis, Civ. Action No. 08-4627, 2009 WL 1704335, at *10 (E.D. La. June 16, 2009); Stogner v. Cain, Civ. Action No. 05-4317, 2008 WL 269078, at *20 (E.D. La. Jan. 30, 2008); Baker v. Cain, Civ. Action No. 05-3772, 2007 WL 1240203, at *5 (E.D.La. Apr. 26, 2007).

For all of the foregoing reasons, petitioner's Brady claim should be rejected.

### D. Ineffective Assistance of Counsel

Petitioner's fourth claim is that he received ineffective assistance of counsel. The United States Supreme Court has established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate *both* that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the

reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Petitioner first claims that he was visited by counsel only four or five times prior to trial. To the extent that petitioner is contending that counsel failed to meet with him sufficiently or failed to abide by the professional rules of conduct concerning communication between an attorney and his client, that alone would not warrant relief under the Sixth Amendment. Rather, such relief is warranted only if petitioner can also "show that but for his counsel's alleged unprofessional errors, there is a reasonable probability the result of the proceeding would have been different." United States v. Hunter, No. 08-10487, 2009 WL 689677, at *1 (5th Cir. Mar. 17, 2009). Where, as here, petitioner has not shown that any demonstrable benefit would have accrued to the defense from

additional meetings or better communication, he has not proven that any prejudice resulted, and his claim necessarily fails. Everett v. Louisiana, Civ. Action No. 08-4745, 2009 WL 1971370, at *4 (E.D. La. July 7, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *8 (E.D. La. Dec. 11, 2008).

Petitioner next claims that counsel failed to move to have petitioner released on bail. However, as noted previously, this Court is concerned only with errors which undermine confidence in the *outcome of the trial*, and petitioner fails to explain how there is a reasonable probability that the ultimate result of this proceeding would have been different if counsel had moved for bail. Therefore, once again, petitioner has not established the prejudice required to support his claim. See Vanlier v. Carroll, 535 F. Supp. 2d 467, 475 (D. Del. 2008), aff'd, 384 Fed. App'x 155 (3rd Cir. 2010); Dowell v. Lensing, 805 F. Supp. 1335, 1356 (M.D. La. 1992), aff'd, 996 Fed. App'x 306 (5th Cir. 1993).

Petitioner also claims that counsel was ineffective for allowing the victims to be coached by the prosecution. However, petitioner has presented no evidence whatsoever of impermissible coaching, and he so he clearly has not met his burden of proof with respect to this unsupported, conclusory allegation.

In a rather confusing argument, petitioner additionally seems to fault counsel for allowing lies to be told at trial. This contention seems to be based on the discrepancy in the testimonies of N.C. and his mother regarding whether N.C. had seen petitioner's picture in an internet news article. However, that discrepancy was fully explored at trial,[31] and it is unclear what

---

[31] State Rec., Vol. VI of X, trial transcript at pp. 831-32, 854-56, and 864-65.

additional steps petitioner is arguing should have been taken by counsel with respect to the testimony. The Court simply finds no basis for an ineffective assistance claim concerning this issue.

Petitioner additionally claims that counsel was ineffective for allowing the prosecution to play interviews and recordings of the victims at trial. That contention is clearly baseless. If petitioner is referring to the audiotape made by J.B.'s father previously discussed herein, defense counsel *did* object to the admission of that evidence; his objection was simply overruled. On the other hand, if petitioner is referring to the videotaped interviews made by the Children's Advocacy Center, such videotapes are admissible under state law when, as here, the child testifies at trial and can be questioned regarding the statements made in the videotape. See, e.g., State v. Borden, 986 So.2d 158, 169-70 (La. App. 5th Cir. 2008). Therefore, any challenge to the admissibility of that evidence would have had no merit, and counsel does not perform deficiently by failing to make meritless objections. Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir.1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Petitioner further claims that counsel was ineffective for allowing a civil attorney to submit petitioner's DNA for testing. However, even if the Court assumes for the purposes of this proceeding that counsel was aware of the testing and had a legal basis for halting it, petitioner states that the DNA test results were *negative*.[32] Because the results were not incriminating, petitioner

---

[32] Rec. Doc. 1-1, p. 16 (No. 12-1897).

obviously suffered no prejudice from counsel's actions or inactions in this regard, and this claim therefore necessarily fails.

Petitioner next claims that counsel was ineffective for failing to ask all of the questions and present all of the evidence petitioner desired. As an initial matter, the Court notes that the questioning of witnesses and the presentation of evidence are inherently matters of trial strategy. See, e.g., Craig v. Cain, Civ. Action No. 08-3486, 2009 WL 117010, at *12 (E.D. La. Jan. 14, 2009) ("The questioning of witnesses falls within the ambit of trial strategy which is not to be questioned in hindsight."); Jackson v. Conway, 765 F. Supp. 2d 192, 269 (W.D.N.Y. 2011) ("The decision about whether to introduce a particular piece of evidence is a question of trial strategy which courts will practically never second-guess." (citations and quotation marks omitted)); Yaitsky v. United States, C.A. No. 2:04-cr-1097, 2008 WL 3845446, at *22 (D.S.C. Aug. 18, 2008) ("Numerous cases hold that introduction of evidence is trial strategy for purposes of ineffective assistance of counsel claims."), appeal dismissed, 322 Fed. App'x 347 (4th Cir. 2009). The United States Supreme Court has cautioned courts not to assess counsel's decisions concerning strategy through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689. Moreover, in any event, petitioner has not identified which questions went unasked and which evidence went unintroduced, much less made the necessary showing that the questions and evidence would have benefitted the defense in any way. As a result, he clearly has not met his burden to demonstrate either that counsel performed deficiently or that prejudice resulted.

For all of the foregoing reasons, petitioner's ineffective assistance of counsel claims should be rejected.

### E. Prosecutorial Misconduct

Petitioner's final claim is that the prosecutor engaged in misconduct. The "misconduct" at issue appears to be based on an allegation that prosecutors were observed "coaching" the state's witnesses. However, once again, petitioner has presented no evidence whatsoever in support of this claim. Moreover, it is clear that a prosecutor's action in "[m]eeting with a witness before trial, by itself, suggests no impropriety." United States v. Nambo-Barajas, 338 F.3d 956, 963 (8th Cir. 2003). Further, prosecutors are obviously allowed to interview their witnesses and to prepare them to testify *truthfully* at trial, and such actions do not cross the line into the territory of impermissible coaching. See, e.g., United States v. Rivera-Hernandez, 497 F.3d 71, 80 (1st Cir. 2007) ("Prosecutors and defense attorneys alike are entitled to prepare their witnesses."). While a prosecutor is *not* allowed to suborn perjury by encouraging and preparing a witness to testify *untruthfully*, petitioner has presented no evidence whatsoever that such impermissible coaching occurred here. Because petitioner has not met his burden of proof with respect to this claim, relief is unwarranted.

### **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petitions of **Dino Schwertz** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from

a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996)

(en banc).

New Orleans, Louisiana, this thirteenth day of November, 2012.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**